Leo Fox, Esq.
630 Third Avenue - 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

In re:                                                                          Chapter 7
                                                                                Case No. 15-11862 (MEW)
A.N. Frieda Diamonds, Inc.,

                                        Debtor.

-------------------------------------------------------X

MATTHEW C. HARRISON, JR.,

                                Trustee-Plaintiff                      Adv. Proc. No. 17-01103 (MEW)

        -    against    -

RONEN KONFINO, FRIEDA KONFINO,
RONI RUBINOV, NEW LIBERTY PAWN
SHOP, INC., NEW YORK ESTATE BUYERS
and ABNER RUBINOV a/k/a AVNER
RUBINOV,

                        Defendants,

and

VNB NEW YORK, LLC,

                        Defendant-Intervenor.

-------------------------------------------------------X

### NOTICE OF HEARING ON TRUSTEE'S MOTION FOR AN ORDER
### PURSUANT TO FED. R. BANK.R P. 9019
### APPROVING THE STIPULATION OF SETTLEMENT
### BETWEEN THE TRUSTEE AND VNB NEW YORK, LLC

*PLEASE TAKE NOTICE* that upon the Declaration of Leo Fox, Esq. and the exhibits

attached hereto, Matthew C. Harrison, Jr., the Chapter 7 Trustee for the Estate of A.N. Frieda

will move before the Honorable Michael E. Wiles, United States Bankruptcy Judge, in his

Courtroom, United States Bankruptcy Court, Southern District of New York, located at One

Bowling Green, New York, New York on March 31, 2020 at 10:00 a.m. or as soon thereafter as counsel can be heard, for an Order pursuant to Bankruptcy Rule 9029 (1) granting Trustee's motion to settle action against defendants and (2) authorizing distributions to Ronen Konfino and to the Trustee's special counsel.

    ***PLEASE TAKE FURTHER NOTICE*** THAT THE Motion has been filed electronically with the Clerk of the United States Bankruptcy Court for the Southern District of New York and may be view by all registered users of the Court's website at http://ecf.nysb.uscourts.gov. Copies of the Motion can also be obtained by telephonic, written or e-mail request to the undersigned counsel to the Trustee, Attn:   Leo Fox, Esq., (212) 867-9595 or e-mail: leo@leofoxlaw.com).

    ***PLEASE TAKE FURTHER NOTICE*** that  any objection, if any, to the relief sought in the Motion must be in writing, must set forth in detail the grounds and facts of such objection and the legal basis therefore, must be filed with the Clerk of the Bankruptcy Court, Old Customs House, One Bowling Green, New York, New York, in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and, by all other parties (with a hard copy delivered directly to Chambers of the Honorable Michael E. Wiles, United States Bankruptcy Judge, United States Bankruptcy Court, Southern District of New York, Old Customs House, One Bowling Green, New York, New  York 10004) and served so as to be received by (1) Leo Fox, Esq., as counsel to the Chapter 7 Trustee, 630 Third Avenue, 18th Floor, New York, New York 10017 and  (2) The Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 on or before seven (7) days before the scheduled Hearing Date herein (the "Objections Deadline").

**PLEASE TAKE FURTHER NOTICE** that the hearing may be adjourned without further

notice other than by announcement of such adjournment in open Court.

Dated: New York, New York
      March 9, 2020

                                                  /s/ Leo Fox
                                                  Leo Fox, Esq.
                                                  Attorney for Chapter 7 Trustee
                                                  630 Third Avenue – 18th Floor
                                                  New York, New York 10017
                                                  (212) 867-9595
                                                  leofox1947@aol.com

Leo Fox, Esq.
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595
leo@leofoxlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re:                                                          Chapter 7
                                                                Case No. 15-11862 (MEW)
A.N. FRIEDA DIAMONDS, INC.,

                              Debtor.
--------------------------------------------------------X
MATTHEW C. HARRISON, JR.,

                              Trustee-Plaintiff              Adv. Proc. No. 17-01103 (MEW)

        -   against   -

RONEN KONFINO, FRIEDA KONFINO,
RONI RUBINOV, NEW LIBERTY PAWN
SHOP, INC., NEW YORK ESTATE BUYERS
and ABNER RUBINOV a/k/a AVNER
RUBINOV,

                              Defendants,

and

VNB NEW YORK, LLC,

                              Defendant-Intervenor.
--------------------------------------------------------X

**TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO
FED. R. BANKR. P. 9019 APPROVING A STIPULATION OF SETTLEMENT
<u>BETWEEN THE TRUSTEE AND VNB NEW YORK, LLC</u>**

**TO THE HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE**

        Matthew C. Harrison, Jr. the Chapter 7 Trustee (the "Trustee") of the above captioned case,

by Leo Fox, as and for his application (the "Application") for the issuance and entry of a

FoxNAS\Leo\AN Frieda\Adversary Proceeding\Konfino-Rubinov\VNB\Settlement\AgreementV6\3-9-2020

Stipulation approving the settlement between the Trustee and VNB New York, LLC ("VNB") (*Exhibit A*) respectfully sets forth as follows:

## PRELIMINARY STATEMENT

By this Motion, the Trustee seeks approval of a settlement with VNB resulting in a sharing of the expected proceeds of the assets of the Estate and the exchange of releases.   For all of the reasons set forth below, the Trustee believes that approval and consummation of the settlement is in the best interests of the Debtor's estate and creditors, and respectfully requests that it be approved.

## JURISDICTION AND VENUE

1.    Venue of the case in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1049.

2.    The statutory predicate for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.    An involuntary petition was filed on July 16, 2015 under Chapter 7, Title 11 of the United States Code (the "Bankruptcy Code").

4.    On July 16, 2015, the Petitioning Creditors moved for an appointment of an interim trustee, and Ian J. Gazes was appointed interim trustee pursuant to Order dated August 5, 2015 (Docket No. 20) and Notice of Appointment dated August 6, 2015 (Docket No. 21).

5.    The Court entered an order for relief by granting the involuntary petition on September 9, 2015 (Docket No. 41).   On November 16, 2015, Matthew C. Harrison, Jr., accepted the appointment as permanent Chapter 7 Trustee (Docket No. 69).   On November 19, 2015, the Bond for the permanent trustee was filed (Docket No. 73).

2

## FACTS

6.      The VNB claim is secured by a security interest in the assets of the Debtor as more

particularly described in the security agreements, UCC filings (*Exhibit B*); and other loan

documents (the "Loan Documents").

7.      VNB's security interest includes personal property of the Debtor, including

inventory, accounts receivable and other property (the "VNB Collateral").

8.      Payment of Debtor's obligations to VNB were guaranteed in writing by each of

Ronen Konfino and Frieda Konfino (collectively, the "Guarantors").

9.      VNB obtained judgments against each of the Guarantors in the Supreme Court,

New York County (the "NY Guarantor Judgments").

10.     VNB also obtained judgments against each of the Guarantors in Israel (the "Israel

Judgments").

11.     The Israel Judgments attached to proceeds of a foreclosure sale of the Guarantors'

home in Israel (the "Israel Residence") and $603,800 was distributed to VNB from those proceeds

(the "VNB Israel Payment").

12.     The VNB Israel Payment reduced the amount of the VNB claim to $1,242,722.07.

13.     The NY Judgments and the Israel Judgments shall be referred to collectively herein

as the "VNB Judgments".

14.     The above-captioned Adversary Proceeding was commenced on August 2, 2017

(the "Proceeding"), when the Trustee filed a Summons and Complaint against Ronen Konfino,

Frieda Konfino (collectively, the "Konfinos"), Roni Rubinov and New Liberty Pawnshop, Inc.

("New Liberty") (collectively, the "Roni Rubinov Parties") and Abner Rubinov, a/k/a Avner

3

Rubinov and New York Estate Buyers ("NY Estate") (collectively, the "Avner Rubinov Parties").

15.    The Proceeding seeks recover under, *inter alia*, 11 U.S.C. §549, from the Roni Rubinov Parties and the Avner Rubinov Parties, of *inter alia*, inventory pawned at New Liberty (the "Rubinov Pawns") and the proceeds thereof, including subsequent transfers of the Rubinov Pawns to third parties, including the Avner Rubinov Parties.

16.    By order dated October 2, 2017 (Docket No. 18), the Court granted VNB's motion to intervene as a defendant/counterclaimant/cross-claimant and filed a Summons for Cross-claims in the Proceeding.

17.    On October 9, 2017, VNB filed its Answer, Counterclaims and Cross-claims (the "VNB Pleading") and a request for a Summons on the cross-claims (Docket No. 21).

18.    The VNB Pleading asserts Counterclaims against the Trustee for (a) a declaratory judgment that VNB's first priority security interest in the VNB Collateral, including the Rubinov Pawns and any other VNB Collateral or their proceeds, has priority over any claims by the Trustee or unsecured creditors and (b) turnover to VNB of any property subject to VNB's secured claim.

19.    The VNB Proceeding also asserts Cross-claims against Roni Rubinov and Avner Rubinov each for conversion and aiding and abetting conversion (the "VNB Rubinov Cross-claims").

20.    Any funds or property collected by the Trustee and/or VNB on account of any claims by the Trustee against the Roni Rubinov Parties or the Avner Rubinov Parties in the Proceeding by judgment, settlement or otherwise; shall be referred to herein as the "Trustee Rubinov Proceeds.

21.    Ronen Konfino and Frieda Konfino each defaulted in answering the Complaint

4

filed in the Proceeding, and the Trustee obtained default judgments against each of them in the amount of $3,761,000 (the "Trustee's Konfino Judgments").

22.    Any funds or property collected by the Trustee in the United States, Israel or any other country on the basis of the Trustee's Konfino Judgments shall be referred to herein as (the "Trustee's Konfino Proceeds").

23.    The Trustee has collected (a) $213,000 (the "Kaminski Proceeds") and $169,000 (the "Y.Z. Proceeds") in connection with actions brought pre-petiti8on by the Debtor and Ronen Konfino.  The Trustee also collected approximately $75,000 in diamonds from Friend & Co. which is currently being held in a safety deposit box along with other diamonds belonging to the Debtor which were turned over to the Trustee ("Diamond Proceeds").

24.    The Trustee has commenced preference actions against other parties estimated to yield approximately $38,000 in recoveries (the "Preference Recoveries").

25.    Frieda Konfino has filed bankruptcy in Israel (the "Frieda Bankruptcy") and VNB has filed a claim in the Frieda Bankruptcy for NIS 8,592,127.36 (approximately $2,472,483.46) (the "Israel Bankruptcy Claim").[1]

26.    Any recoveries from the VNB Israel Bankruptcy Claim shall be referred to as the "Israel Bankruptcy Proceeds".

27.    The total of the Y.Z. proceeds, the Kaminski Proceeds, the Preference Recoveries, the Trustee's Konfino Proceeds, the Diamond Proceeds and the Israel Bankruptcy Proceeds shall be referred to herein as the "Non-Rubinov Proceeds".

---

[1] The Israel Bankruptcy Claim includes charges for interest and attorney's fees and expenses after July 15, 2015, which are not recoverable in this case.

5

## THE SETTLEMENT

28.    The settlement provides:

a.    The VNB Claim, as amended under the terms of this Stipulation and Order, is a valid, perfected, first-priority secured claim in the amount of $1,242,722.07.

b.    For the purposes of distribution to unsecured creditors, the Professional Fees shall be allocated 50% to the Rubinov Claims and 50% to the Non-Rubinov Claims.  The Rubinov claims less 50% of the Professional Fees shall be referred to as the "Net Rubinov Distribution" and the Non-Rubinov Claims less 50% of the Professional Fees shall be referred to as the "Net Non-Rubinov Distribution".  The provisions of §507 will govern the payment to the Allowed Professional Expenses.

c.    VNB shall retain the VNB Israel Payment.

d.    Of the VNB-Rubinov proceeds, VNB is to receive 65% of the net proceeds after deducting 50% of the administration expenses and the unsecured creditors and Estate are to receive the balance.  VNB's claims shall not share in the distribution of the Bankruptcy Estate.

e.    Of the Trustee-Rubinov proceeds, VNB is to receive 36.5% of the proceeds and the unsecured creditors and the Estate are to receive the balance.  VNB's claims shall not share in the distribution of the Bankruptcy Estate.

f.    Of the Non-Rubinov proceeds, VNB is to receive 27% of the net proceeds after deducting the 50% of the administration expenses and the Estate and

6

the unsecured creditor are to receive the balance. VNB's claims shall not share in the distribution of the Bankruptcy Estate.

g.     VNB is to retain 100% of the $603,800 which it collected in connection with the bankruptcy proceedings of Frieda Konfino. VNB's claims shall not share in the distribution of the Bankruptcy Estate.

h.     The maximum amount payable to VNB under paragraphs (d), (e) and (f) above, is $460,000.

i.     Subject to the terms of this Stipulation and Order, VNB assigns to the Trustee all its right, title and interest in and to the VNB Total Claims, the VNB Rubinov Claims, the VNB Guarantor Judgments, and the Frieda Israel Bankruptcy Claim. VNB agrees to execute and deliver to the Trustee separate agreements of assignment in form and substance acceptable to the parties.

29.     Total claims on file is approximately $3,200,000 which includes a total VNB claim of $1,800,000 reduced by the $600,000 VNB received in connection with its claims against Frieda Konfino in Israel based on Frieda Konfino's guaranty of VNB's debt for a net due of $1,200,000. Other creditors' claims total approximately $1,200,000 ($3,200,000 less the VNB $1,800,000). VNB's share of the total creditor distribution is 30% ($1,200,000 ÷ $4,000,000) assuming that VNB's claims are valid and totally unsecured.

30.     Issues that were raised to the validity of VNB's security interest raised issues involving lender's liability claims as well as the validity of the security interest in the specific above assets as follows.

7

31.    The lender's liability claims are as follows.    The Trustee has alleged that principals of VNB's predecessor, Merchant's Bank, had maintained a relationship with the Debtor's principal's father (the father of Frieda Konfino).    Over the years, they maintained a very close and friendly relationship.    VNB, or its predecessor, advanced over $2,000,000 in loans secured by the assets of the Debtor.

32.    Over the several years prior to the Involuntary Bankruptcy filing in July 2015, it appeared that the Debtor was losing money.    Many of the Debtor's checks bounced and the Debtor was issuing numerous stop payment orders.    Despite this, VNB continued with business as usual and continue to pay down its secured loans.    These bounced checks began occurring in substantial volume in or about early 2014.    In 2015, VNB purported to ask for an audit of the Debtor's books and records.    The Debtor's accountants provided VNB's auditors with a number of the records requested by the auditor.    Several meetings were rescheduled and the audit was never completed (although by 2015 it is questionable as to whether the losses incurred in the prior years had anything to do with the failure to conduct an audit).    It has been alleged that this resulted in substantial damages by continuing to keep the Debtor's business alive and allowing VNB to pay down its loans to the approximate $1,800,000 balance that existed as of the Chapter 7 filing.

33.    The causes of action would include a claim that VNB aided and abetted in the Debtor's fraud against the creditors.    See, for example, *In re: Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 281 B.R. 506 (Bkrtcy. E.D.N.Y. 2002) (Plaintiff must plead a breach by a fiduciary of obligations to another that the Defendant knowingly induced or participated in the breach and the Plaintiff suffered damages as a result of the breach).    The Trustee has reviewed whether the Trustee could prove VNB's actual knowledge of the Debtor's breach of fiduciary duty

to the creditors.    Factors relating to the actual knowledge include the existence of many bounced checks, VNB was certainly aware of the number of checks.    Courts have held that suspicion and surmise did not constitute actual knowledge *Id*. At 19.    While VNB failed to complete the audit of the Debtor's affairs, that failure may be simply explainable as the Debtor's inability to schedule a meeting to answer the questions raised by VNB's auditors.

34.    Nor do these facts militate the finding of liability under the principals of lender liability arising from breach of contract, failure to disclose material facts, breach of fiduciary duty, tortious interference with contractual relationships or breach of a covenant of good faith and fair dealing.    See *In re Jat Mgmt of Ohio, Ltd.*, 2002 Bankr. Lexis 1546).    The Court found that the debtor was "not forced out of business solely because of the Debtor's actions and that other business-related reasons caused the debtor's problems" *Id*. at 60.    The case goes on to state that New York Courts will not enforce covenants of good faith and fair dealing where such covenants are inconsistent with the terms of the contract.

35.    Claims of equitable subordination require a finding that the claimant filing the proof of claim engaged in some type if inequitable conduct, the misconduct must have resulted in injury to the creditors or conferred on an unfair advantage on the claimant and equitable subordination must not be inconsistent with the provisions of the Bankruptcy Code.    In short, there are very substantial and significant burdens to establish that VNB would be responsible to the creditors for the actions it undertook as a bank for the Debtor.

36.    The Trustee has considered the potential strength of these claims, the extent of the litigation and the costs which would be required to undertake this litigation and determined that the settlement provisions here are fair and reasonable under these circumstances.

9

37.    Even assuming the validity of VNB's secured claims on the lender's liability issue, issues as to validity of its liens on of the specific assets are as follows.

## YZ INSURANCE CLAIM

38.    The YZ insurance claim was a claim brought by the Debtor and Ronen Konfino prior to the Petition against third parties seeking recoveries on account of negligence of a diamond dealer acquaintance of Konfino for introducing a prospective customer who turned out to be a murderer and thief and who killed the acquaintance and seriously injured Konfino.    Damages were alleged on account of Konfino's personal injuries and the loss of Debtor's merchandise which had been brought to the meeting.    The third-party defendant brought in his insurance company who ultimately settled the litigation.    The Trustee settled with Ronen Konfino as to insurance proceeds and obtained the execution by Ronen Konfino of the Release required by the third-party insurance company by the payment of $50,000 to Ronen Konfino pursuant to Court Order.

39.    The Trustee argues that VNB does not have a lien on "commercial tort claims" UCC 9102(a)(13).    The VNB UCC Statement does not include commercial tort claims.    These proceeds are not proceeds from the Debtor's insurance or Konfino's insurance policy but the insurance of a third party who was named as a defendant.    There is no security interest held by VNB in the proceeds of this litigation.    Furthermore, any lien VNB had in the Debtor's inventory which was stolen by the thief/criminal evaporated under State Law when the collateral disappeared and was no longer in the Debtor's possession NYUCC 9-315.    *Itria Ventures LLC v. JPMorgan Chase Bank, NA*, (2019 N.Y. Misc. Lexis 497).    While VNB filed a UCC Statement against Ronen Konfino in November 2017, after the Debtor's Petition Date, that UCC Statement is problematic for a number of reasons but clearly does not cover the commercial tort claim, and, in any event,

10

would not include a personal injury like this one.    The Trustee believes that VNB would be treated as a general unsecured creditor with respect to this asset (approximately 30% distribution).

## KAMINSKI INSURANCE CLAIM

40.    The claim against Kaminski arose out of an action by the Debtor in New York State Supreme Court prepetition against a salesman who was holding approximately $700,000 of diamonds which were stolen while the salesman was a sales trip.    The lawsuit against Kaminski included breach of contract, negligence, and failure to comply with procedures required under the insurance contract.    The salesman went bankrupt and the Bankruptcy Court ultimately determined the debt held by the Trustee against Kaminski to be non-dischargable.    Thereafter, the action in the New York State Supreme Court proceeded.    A settlement was reached with Kaminski directly.    No insurance proceeds were involved.    This might constitute a chose in action but VNB does not have a UCC right to a chose in action.    The inventory held by the salesman disappeared, and any claims held by the Debtor with respect to inventory was discharged in the salesman's bankruptcy leaving only the claim for fraud which was settled.    Finally, such inventory evaporated as noted above releasing any liens that VNB might have had.    VNB would be entitled to share as a300% unsecured creditor.

## DIAMONDS IN THE VAULT

41.    The Trustee is holding certain diamond inventory in the vault at VNB subject to liens, claims and encumbrances.    The diamonds in the Trustee's name in the vault at VNB appear to originate as Debtor's inventory.    These were the diamonds stored at the vault at the time of the filing and the diamonds subsequently recovered from Friend during the course of the litigation by the Trustee.    It is difficult to determine the value of these diamonds.    VNB holds a security

11

interest in the inventory of the Debtor.  VNB may have a security interest in this property and would be entitled to 100% of the inventory and its proceeds.

### FRIEDA KONFINO'S ISRAEL HOME SALE

42.    It appears that VNB obtained a judgment against the Frieda Konfino based on a Guarantee by Frieda Konfino and sought to enforce its rights in Israel against a fund arising from the sale of Frieda Konfino's residence, that was established to pay creditors.  VNB received approximately $600,000 from the Israeli fund.  It appears that this constitutes a separate, independent obligation owed by Frieda Konfino to VNB.  The proceeds of the property from the Debtor's principal may not constitute assets of the Estate and VNB is entitled to 100% of its assets.

### TRUSTEE'S RUBNOV CLAIMS

43.    The Trustee commenced an Adversary Proceeding against Roni and Avner Rubinov and Ronen and Frieda Konfino, asserting with respect to the Rubinov's that they engaged in a improper and an invalid post-petition transfer of inventory where inventory in the approximate range of $1,200,000 - $2,000,000 was transferred post-petition in violation of several Bankruptcy Court Orders under §549 of the Bankruptcy Code.  VNB subsequently asserted a Cross-claim alleging that the Rubinov's improperly transferred inventory constitute a conversion of the inventory which represented property in which VNB held a security interest.  A Stipulation was entered into between the Trustee and VNB deferring any decision on the priorities held in such inventory until after the disposition of the case.  A trial was held and the matter is presently *sub judice*.

44.    It may be argued that the Trustee's §549 claim against Rubinov is not a claim that in which the Bank security interest can attach as proceeds under §549 as well as under § 552(b) of

the Bankruptcy Code. *In re Figearo*, 79 B.R. 914 (Bkrtcy. D.Nev. 1987); *In re Sun Island Foods*,

125 B.R. 615 (Bkrtcy D.Hawaii 1991). In addition, it may be argued under State Law the VNB

lien in "proceeds" evaporated when the collateral disappeared and was no longer in the Debtor's

possession. NYUCC 9-315; *Itria Ventures LLC v. JPMorgan Chase Bank, NA*, (2019 N.Y. Misc.

Lexis 497). The Trustee believes that VNB will be entitled to share in this asset to the extent of

its 30% share as a general unsecured creditor.

45.    At best, VNB holds a claim against Rubinov for participating in the transaction

which would be an unsecured claim and not entitle VNB to any priority in these assets. VNB

denies this. There are clear issues of fact and law which make this determination a difficult one to

quantify on the interest of the parties in the proceeds of the litigation. The Trustee assumes that

VNB would receive a 30% interest as an unsecured creditor.

46.    Summarizing, VNB may hold the following interests in these assets based upon the

above and the settlement proposes the following percentages.

| *Potential Assets* | *VNB Estimated Percentage of Recovery* | *Settlement Payment to VNB* |
|---|---|---|
| | | |
| VNB Cross-Claim against Rubinov, et al | Possibly 100% | 65% |
| Estimated Trustee §549 Claim | 30% | 27% |
| YZ Insurance Settlement | 30% | 27% |
| Claim against Kaminski | 30% | 27% |
| Estimate of Proceeds of Sale of Diamonds in Vault | 100% | 27% |
| Proceeds from sale of Frieda apartment in Israel | 100% | 100% |
| Miscellaneous Litigation Proceedings - Cash | 30% | 27% |
| Other Potential Collections | Undetermined | Undetermined |

47.    It appears that in every case, the Trustee and the Estate will be receiving an equal or greater percentage of the assets over VNB's entitlement than what the law might require.

## ADMINISTRATION EXPENSES

48.    The administration expenses are not quantified.    VNB has not objected to any amounts less than $700,000.    All of these administration expenses are subject to an Order of the Court on notice and hearing.

## RELIEF REQUESTED

49.    By this Motion, the Trustee seeks the Court's approval of the Stipulation and asserts that the terms, conditions and compromises contained therein are fair and reasonable under the circumstances and that approval of the Stipulation is in the best interests of the Estate and its creditors.

50.    Rule 9019(a) of the Bankruptcy Procedure governs the approval of compromises and settlements, and provides in pertinent part, as follows:

> On motion by the trustee and after notice and a hearing, the court
> may approve a compromise or settlement.    Notice shall be given to
> creditors, the United States trustee, the debtor, and indenture trustees
> as provided in Rule 2002 and to any other entity as the court may
> direct.

51.    In approving a compromise or settlement, the Bankruptcy Court is required to make an "informed and independent judgment" as to whether the compromise or settlement is fair and equitable based on an:

> [educated estimate of the complexity, expense and likely duration
> of litigation, the possible difficulties of collecting on any judgment
> which might be obtained, and all other factors relevant to a full and
> fair assessment of the wisdom of the proposed compromise.    Basic
> to this process, in every instance, of course, is the need to compare

14

the terms of the compromise with the likely rewards of litigation.

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425, reh'g denied, 391 U.S. 909 (1968).  *Accord American Can Co. v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d, 605, 607 (5ᵗʰ Cir. 1980); *Chopin Assoc. v. Smith (In re Holywell Corp.*), 93 B.R. 291, 294 (Bankr. S.D. Fla. 1988); *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1998); *In re Bell & Beckwith*, 77 B.R. 606, 611 (Bankr N.D. Ohio), aff'd, 87 B.R. 472 (N.D. Ohio 1987).  See also, *Magill v. Springfield Marine Bank (In re Heissinger Resources Ltd.)*, 67 B.R. 378, 383 (C.D. Ill. 1996) ("the law favors compromise").

52.    In reviewing the proposed settlement, the Court should consider whether the proposed compromise is in the "best interest of the estate".  *Depo v. Chase Lincoln First Bank, N.A. (In re Depo)*, 77 B.R. 381, 383 (N.D.N.Y. 1997) ("*Depo*"), aff'd, 863, F.2d, 45 (2ⁿᵈ Cir. 1998).  Moreover, the "approval of [a] proposed compromise and settlement is a matter of this Court's sound discretion." *Arrow Air, Inc.*, supra, 85 B.R. at 891.  However, the Bankruptcy Court "does not substitute its judgment for that of the Trustee." *Depo*, supra, 77 B.R. at 384.

53.    Nor is the Bankruptcy Court "to decide the numerous questions of law and fact raised by [any objectors] but rather to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  See *Osoff v. Rodman*, 699 F.2d 599, 608 (2ⁿᵈ Cir.), cert. denied, 465 U.S. 822 (1983), quoting *Newman v. Stein*, 464 F.2d 689, 693 (2ⁿᵈ Cir.), cert. denied, 409 U.S. 1039 (1972).  *Chopin Assoc. v. Smith*, supra, 93 B.R. at 194 ("In order to exercise this discretion properly, the Court must consider all the relevant facts and evaluate whether the compromise suggested falls below the 'lowest point in the range of reasonableness'", quoting *In re Teltronics Services, Inc.*, 762 F.1d 185, 189 (2ⁿᵈ Cir. 1985).  Furthermore, in passing

15

upon the reasonableness of a proposed compromise, the Court "may give weight to the opinions

of the trustee ... the parties and their counsel." *In re Bell & Beckwith*, *supra*, 77 B.R. at 611.

54.    The factors to be considered by the Court in determining whether to approve a

settlement include:

> (1)    the probability of success in the litigation, with due consideration
> for the uncertainty in fact and law;

> (2)    the complexity and likely duration of the litigation and any attendant
> expense, inconvenience and delay; and

> (3)    all factors bearing on the wisdom of the compromise.

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390

U.S. 414, 424-425.

55.    The Trustee has presented a detailed analysis reflecting that the settlement is clearly

in excess of the longest range of reasonableness.

## NOTICE

56.    Notice of this Motion will be given in accordance with Bankruptcy Rule 2002.

The Trustee submits that such notice constitutes good and sufficient notice and that no other or

further notice need be given.

## NO PRIOR REQUEST

57.    No previous Application for relief requested herein has been made to this or any

other Court.

58.    This motion presents no novel or complex legal issues the law has been cited herein

and the Trustee requests that the Court waive the requirements of to submit a separate

memorandum of law.

16

59.    The Trustee believes that the settlement is in the best interest of the estate and that

this Court should authorize the transactions outlined herein.

*WHEREFORE*, the Trustee respectfully requests that this Court enter an order approving

the settlement with the Defendant-Intervenor and granting such other and further relief as this

Court deems proper.

Dated: New York, New York
       March 9, 2020

                                        Yours, etc.

                                        *Matthew C. Harrison, Jr.*
                                        *Chapter 7 Trustee*

                                        By:    */s/ Leo Fox*
                                               Leo Fox, Esq.
                                               Attorney for Trustee-Plaintiff
                                               630 Third Avenue – 18th Floor
                                               New York, N.Y. 10017
                                               (212) 867-9595
                                               leo@leofoxlaw.com

*EXHIBIT A*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>A.N. FRIEDA, INC.<br><br>               Debtor. | Chapter 7<br><br>Case No. 15-11862 (MEW) |
| MATTHEW C. HARRISON, JR.,<br><br>             Trustee-Plaintiff<br><br>        -against-<br><br>RONEN KONFINO, FRIEDA KONFINO<br>RONI RUBINOV, NEW LIBERTY PAWN<br>SHOP, INC., NEW YORK ESTATE BUYERS<br>and ABNER RUBINOV a/k/a AVNER<br>RUBINOV,<br><br>             Defendants,<br><br>And<br><br>VNB NEW YORK, LLC<br><br>             Defendant-Intervenor. | Adv. Pro. No. 17-01103 (MEW)<br><br>**STIPULATION AND ORDER** |

     IT IS HEREBY STIPULATED AND AGREED, by and between Matthew C. Harrison, Trustee (the "Trustee") of the Chapter 7 Bankruptcy Estate of A.N. Frieda Diamonds, Inc. (the "Debtor") and VNB New York, LLC ("VNB"), by their undersigned attorneys, that

     WHEREAS, the Debtor was in the diamond business, with premises located at 580 Fifth Avenue, New York, NY 10036. It ceased doing business in or about July 2015; and

WHEREAS, an involuntary petition was filed against the Debtor on July 16, 2015 (the "Petition Date") under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York; and

WHEREAS, as of the Petition Date, the Debtor's indebtedness to VNB was $1,846,522.07 (the "VNB Claim") as more particularly set forth in a proof claim filed with this Court (the "VNB Proof of Claim"); and

WHEREAS, on September 9, 2015, the Court entered an Order for Relief, and on or about November 12, 2015, the Trustee was elected Chapter 7 Trustee for the Bankruptcy Estate of the Debtor; and

WHEREAS, the VNB Claim is secured by a security interest in the assets of the Debtor as more particularly described in the security agreements, UCC filings; and other loan documents (the "Loan Documents"); and

WHREAS, VNB's security interest includes all personal property of the Debtor, including all inventory, accounts receivable and other property (the "VNB Collateral"); and

WHEREAS, payment of Debtor's obligations to VNB were guaranteed in writing by each of Ronen Konfino and Frieda Konfino (collectively, the "Guarantors"); and

WHEREAS, VNB obtained judgments against each of the Guarantors in the Supreme Court, New York County (the "NY Guarantor Judgments"); and

WHEREAS, VNB also obtained judgments against each of the Guarantors in Israel (the "the Israel Guarantor Judgments"); and

2

WHEREAS, the Israel Guarantor Judgments attached to proceeds of a foreclosure sale of the Guarantors' home in Israel (the "Israel Residence"), and $603,800 was distributed to VNB from those proceeds (the "VNB Israel Payment"); and

WHEREAS, the VNB Israel Payment reduced the amount of the VNB claim to $1,242,722.07.

WHEREAS, the NY Judgments and the Israel Guarantor Judgments shall be referred to collectively herein as the "VNB Judgments."

WHEREAS, the above captioned adversary proceeding was commenced on August 2, 2017 (the "Trustee Proceeding"), when the Trustee filed a Summons and Complaint against Ronen Konfino, Frieda Konfino (collectively, the "Konfinos"); Roni Rubinov and New Liberty Pawnshop, Inc. ("New Liberty") (collectively, the "Roni Rubinov Parties"); and Abner Rubinov, a/k/a Avner Rubinov and New York Estate Buyers ("NY Estate") (collectively, the "Avner Rubinov Parties"); and

WHEREAS, the Trustee Proceeding seeks recovery under, *inter alia*, 11 U.S.C. § 549, from the Roni Rubinov Parties and the Avner Rubinov Parties of, *inter alia*, inventory pawned at New Liberty (the "Rubinov Pawns") and the proceeds thereof, including subsequent transfers of the Rubinov Pawns to third parties, including the Avner Rubinov Parties; and

WHEREAS, by Order dated October 2, 2017 (Dkt. 18), the Court granted VNB's motion to intervene as a defendant/counterclaimant/cross-claimant and file a summons for Cross-Claims in the Proceeding; and

WHEREAS, on October 9, 2017, VNB filed its Answer, Counterclaims and Cross-claims (the "VNB Pleading"), and a request for a summons on the cross-claims. (Dkt. 21.); and

3

WHEREAS, the VNB Pleading asserts Counterclaims against the Trustee for (a) a declaratory judgment that VNB's first priority security interest in the VNB Collateral, including the Rubinov Pawns and any other VNB Collateral or their proceeds, has priority over any claims by the Trustee or unsecured creditors; and (b) turnover to VNB of any property subject to VNB's secured claim.

WHEREAS, the VNB Pleading also asserts Cross-claims against Roni Rubinov and Avner Rubinov each for conversion and aiding and abetting conversion (the "VNB Rubinov Cross-claims"); and

WHEREAS, the amount of any judgment or settlement of Cross-claims against the Roni Rubinov Parties or the Avner Rubinov Parties in the Proceeding shall be referred to herein as the "VNB Rubinov Proceeds"; and

WHEREAS, the amount of any judgment or settlement of any claims by the Trustee against the Roni Rubinov Parties or the Avner Rubinov Parties shall be referred to herein as the "Trustee Rubinov Proceeds;" and

WHEREAS, any settlement of the Trustee Proceeding and/or the VNB Rubinov Cross-Claims shall include an allocation of amounts that are Trustee Rubinov Proceeds and the amounts that are VNB Rubinov Proceeds; and

WHEREAS, the sum of the VNB Rubinov Proceeds and the Trustee Rubinov Proceeds shall be referred to herein as the "Total Rubinov Proceeds;" and

WHEREAS, the "Trustee Rubinov Percentage" shall be equal to the Trustee Rubinov Proceeds divided by the Total Rubinov Proceeds, and the "VNB Rubinov Percentage" shall be equal to the VNB Rubinov Proceeds divided by the Total Rubinov Proceeds; and

4

WHEREAS, Ronen Konfino and Frieda Konfino each defaulted in answering the complaint filed in the Proceeding, and the Trustee obtained default judgments against each of them in the amount of $3,761,000 (the "the Trustee's Konfino Judgments"); and

WHEREAS, any funds or property collected by the Trustee in the United States, Israel or any other country on the basis of the Trustee's Konfino Judgments shall be referred to herein as the "Trustee's Konfino Proceeds"); and

WHEREAS, the Trustee has also commenced an adversary proceeding, *Trustee v. Friend & Co.* Adv. No. 17-01121 (the "Friend Proceeding") against Friend & Company ("Friend"), for collection of accounts receivable the Trustee alleges Friend owes the Debtor; and

WHEREAS, apart from the Friend Proceeding, Friend has returned to the Trustee approximately $75,000 of diamonds belonging to the Debtor and previously consigned to Friend (the "Friend Diamonds Proceeds"), which are currently held in a safety deposit box at Valley National Bank in the name of the Trustee; and

WHEREAS, the Trustee has collected (a) $213,000 (the "Kaminski Proceeds") and $169,000 (the Y. Z. Proceeds") in connection with actions brought pre-petition by the Debtor and Ronen Konfino; and

WHEREAS, the Trustee has commenced preference actions against other parties estimated to yield approximately $38,000 in recoveries (the "Preference Recoveries"); and

5

WHEREAS, Frieda Konfino has filed bankruptcy in Israel (the "Frieda Bankruptcy"), and VNB has filed a claim in the Frieda Bankruptcy for NIS 8,592,127.36 (approximately $2,472,483.46) (the "Israel Bankruptcy Claim")[1]; and

WHEREAS, any recoveries from the VNB Israel Bankruptcy Claim shall be referred to as the "Israel Bankruptcy Proceeds"), and do not include the VNB Israel Payment; and

WHEREAS, the total of the Y.Z. Proceeds, the Kaminski Proceeds, the Preference Recoveries, the Trustee's Konfino Proceeds, the Friend Diamonds Proceeds and the Israel Bankruptcy Proceeds shall be referred to herein as the "Non-Rubinov Proceeds"; and

WHEREAS, the Trustee expects to incur administrative expenses related to Trustee's commissions, and the professional fees and expenses of the Trustee's counsel and accountant (the "Professional Expenses") and additional priority claims under §507 of the Bankruptcy Code (collectively with the Professional Expenses (" Section 507 Expenses")).

NOW THEREFORE,

1.      The recitals set forth above are expressly incorporated herein and the Parties acknowledge the accuracy thereof.

2.      The VNB Claim, as amended under the terms of this Stipulation and Order, is a valid, perfected, first-priority secured claim in the amount of $1,242,722.07.

3.      VNB shall retain the VNB Israel Payment free and clear of any claim or interest of the Trustee.

---

[1] The Israel Bankruptcy Claim includes charges for interest and attorney's fees and expenses after July 15, 2015, which are not recoverable in this case, but may be in Israel.

4. Subject to the terms of this Stipulation and Order, VNB assigns to the Trustee all its right, title and interest in and to the VNB Claim, the VNB Rubinov Proceeds, the NY VNB Guarantor Judgments, the Israel Guarantor Judgments, and the Israel Bankruptcy Claim, and shall contemporaneously execute and deliver to the Trustee an agreement or agreements of assignment in form and substance acceptable to the parties (the "Assignments"). The Trustee's counsel will hold the Assignments in escrow pending Court approval of this Stipulation and Order.

5. For purposes of distribution to unsecured creditors and VNB, the Section 507 Expenses shall be allocated 50% to the Rubinov Proceeds and 50% to the Non-Rubinov Proceeds. The Rubinov Proceeds less 50% of the Section 507 Expenses shall be referred to as the "Net Rubinov Proceeds," and the Non-Rubinov Proceeds, less 50% of the Section 507 Expenses shall be referred to as the "Net Non-Rubinov Proceeds."

6. The VNB Rubinov Percentage shall be multiplied by the Net Rubinov Proceeds to yield the "Net VNB Rubinov Proceeds". The Trustee Rubinov Percentage shall be multiplied by the Net Rubinov Proceeds to yield the "Net Trustee Rubinov Proceeds." The provisions of § 507 shall govern the payments and priority of distribution to the Section 507 Expenses.

7. After Court approval of an order awarding the Section 507 Expenses (the "Expense Order"), the Trustee shall make simultaneous distributions of (i) the Section 507 Expenses as set forth in the Expense Order, and (ii) as follows:

a. Sixty-five percent (65%) of the Net VNB Rubinov Proceeds to VNB and thirty-five percent (35%) of the Net VNB Rubinov Proceeds to the Bankruptcy Estate. Except as provided in this Stipulation and Order, VNB's claims shall not share in the distribution of the Bankruptcy Estate.

7

b.    Thirty-six and a half percent (36.5%) of the Net Trustee Rubinov Proceeds
to VNB and sixty-three and a half percent (63.5%) of the Net Trustee
Rubinov Proceeds to the Bankruptcy Estate. Except as provided in this
Stipulation and Order, VNB's claims shall not share in the distribution of
the Bankruptcy Estate.

c.    Twenty-seven percent (27%) of the Net Non-Rubinov Proceeds to VNB
and seventy-three percent (73%) of the Net Non-Rubinov Proceeds to the
Bankruptcy Estate. Except as provided in this Stipulation and Order,
VNB's claims shall not share in the distribution of the Bankruptcy Estate.

d.    VNB's total distributions in (a), (b) and (c) above shall not exceed
$460,000. (the "Total VNB Payments"). Any amounts in excess of
$460,000 shall be distributed to the Bankruptcy Estate. Except as
provided in this Stipulation and Order, VNB's claims shall not share in
the distribution of the Bankruptcy Estate.

8.    No Court order other than this Order shall be required for the distributions in
paragraphs 7(a)-(d) above.

9.    Upon a final non-appealable order of the Court approving of this Stipulation and
Order (the "Final Order"), (a) the Trustee hereby releases and discharges VNB, its respective
current and former officers, directors, managers, shareholders, members, trustees, representatives,
employees, agents, predecessors, successors and assigns (the "VNB Parties"), from all actions,
causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties,
covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,
judgments, extents, executions, claims and demands whatsoever in law, admiralty or equity, which

8

against the VNB Parties the Trustee now has or hereafter can, shall or may have for, upon, or by reason of any claim, matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement, concerning the subject matter of this Stipulation and Order.[2]

10.     VNB hereby releases and discharges the Trustee from all claims against the Trustee, and his heirs, representatives, successors and assigns (the "Trustee Parties") from any and all accounts, actions, agreements, bonds, bills, causes of action, claims, contracts, controversies, covenants, damages, debts, dues, executions, expenses, extents, judgments, proceedings, promises, reckonings, specialties, suits, sums of money, trespasses, variances, and demands whatsoever, in law, admiralty or equity, which against the Trustee Parties and their predecessors, successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Release, concerning the subject matter of this Stipulation and Order.

11.     Should the Court decline to approve the Stipulation, the Stipulation shall have no force or effect and the claims between the Trustee and VNB shall remain outstanding as of the date of execution of this Stipulation.

12.     This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original and shall be binding on any party executing this Stipulation, all of which shall constitute one and the same document. Signatures delivered by electronic mail or facsimile shall have the same force and effect as those original signatures.

---

[2] Provided, however, that VNB has not previously transferred any of the claims and rights being assigned to the Trustee to any third party, and the Trustee may commence and continue any litigation and claims against any third party (other than VNB) asserting any claims whatsoever arising from (a) any actions or acts of the Debtor, (b) any acts or actions contemplated or provided under 28 U.S.C. § 157, or 28 U.S.C. § 1334, or (c) any other law which may provide for the assertion by the Trustee of claims.

13.     This Stipulation shall be governed by and construed under applicable federal law and/or the laws of the State of New York.

14.     This Stipulation may not be amended or modified other than in writing executed by the Trustee and VNB.

15.     This Stipulation sets forth the entire agreement between the Trustee and VNB and fully supersedes any and all prior agreements and understandings, written or oral, between the Trustee and VNB pertaining to the subject matter hereof.

16.     This Stipulation shall be binding upon the Trustee and VNB, their respective heirs, executors, successors, administrators and assigns.

17.     The Court may retain jurisdiction to determine any dispute which may arise under the terms of this Stipulation.

Dated: March  6 , 2020
       New York, New York

**ZEICHNER EHLMAN & KRAUSE LLP**
Counsel to VNB

By: _____
    Peter Janovsky, Esq.
    1211 Avenue of the Americas
    New York, New York 10036
    Telephone: (212) 826-5339


**LEO FOX, ESQ.**
Counsel to the Chapter 7 Trustee

By: _____
    Leo Fox, Esq.
    630 Third Avenue
    New York, NY 10017
    (212) 867-9595

#1035251

*EXHIBIT B*

786219    2009 Sep 24 AM10:28

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
CT Lien Solutions

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071, USA
nyack@ucedirect.com

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME  A R Frieda Diamonds Inc

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | 1c. MAILING ADDRESS 589 Fifth Avenue | CITY  New York | STATE NY / POSTAL CODE 10036 | COUNTRY USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION NY | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME  VNB New York Corp

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | 3c. MAILING ADDRESS 275 Madison Avenue | CITY  New York | STATE NY / POSTAL CODE 10016 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
All of the Debtor's personal property wherever located, and now owned or hereafter created or acquired, including accounts, chattel paper, inventory, equipment, instruments, investment property, documents, deposit accounts, letter of credit rights, general intangibles (including payment intangibles), supporting obligations, and all additions, replacements and substitutions thereto and therefor, and to the extent not listed above as original collateral, all cash and non-cash proceeds and products of the foregoing.

| 5. ALTERNATIVE DESIGNATION (if applicable) | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA NY-0-20270709-33215308-846-VNBNY LG 3

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Filing Number-200909245859014

**758644**    **2014 Jun 04 AM10:11**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Gisella Melendez 800-331-3282

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071, USA
efiling@wolterskluwer.com
(Fax)818-662-4141

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #   200000245950014 FS date: 24-SEP-00

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  ☐ DELETE name: Give record name to be deleted in item 6a or 6b.  ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME

OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME

OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
9a. ORGANIZATION'S NAME   VNB NEW YORK CORP

OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA  NY-0-43549511-49541576

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

**Filing Number-201406045584444**